Argued July 27, reversed and remanded with instructions
October 8, petition for rehearing denied November 1,
1973, petition for review allowed January 3, 1974

## STATE OF OREGON, *Appellant, v.* NATHANIEL HERBERT IRVING (No. C 73-01-0231 Cr), *Respondent.*

514 P2d 909

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

Defendant was indicted[1] on January 17, 1973, for the crime of fraudulent sale of imitation drugs under ORS 167.232 which provides:

"(1) A person commits the crime of fraudulent sale of imitation drugs if he sells any compound, substance or other matter, not a narcotic or dangerous drug, to a peace officer or his agent by falsely representing it to be a narcotic or dangerous drug.

"* * * * * *"

The trial court sustained a demurrer to the indictment

"* * * on the grounds * * * that the statute, ORS 167.232, under which defendant was indicted violates the due process and equal protection clauses of the U.S. Constitution, and that ORS 167.232 also violates the Oregon Constitution, Article 1, Section 20."

---

[1] The indictment alleged:

"The said defendant, on or about December 14, 1972, in the County of Multnomah, State of Oregon, did unlawfully and knowingly sell to * * * a peace officer, a substance, not a narcotic by falsely representing said substance to be heroin, a narcotic, contrary to the Statutes * * *."

The basis of the court's decision seems to be that (1) the class singled out by the statute, i.e., those persons who sell to a "police officer or his agent,"[2] bears no relevance to the purpose for which the classification was made, and (2) the statute is not "sufficiently definite so that a person may know the act which is proscribed." After sustaining the demurrer, the court, in effect, dismissed the indictment and the state appeals under ORS 138.060 (1).

The indictment is substantially in the language of the statute and thus is subject to demurrer only if the statute is unconstitutional.

"* * * When a statute is capable of constitutional construction courts are not entitled to adopt a construction which will render the statute unconstitutional, but, on the contrary, are obligated to give it a constitutional interpretation. [Citing cases.]" *State v. Gulbrandson*, 2 Or App 511, 513, 470 P2d 160 (1970).

■ Defendant's contention that the legislative intent of ORS 167.232 is to "protect the public from the fraudulent sale of imitation drugs" is incorrect. This statute was not proposed by the Criminal Law Revision Commission but was added to the proposed code by the Senate Criminal Law and Procedure Committee after hearing testimony concerning the police problem with persons selling imitation narcotics to undercover agents. Testimony was that the purchases of the imitation narcotics were costly to the state and presented some hazard to the undercover officer.[3]

---

[2] No agency is alleged here and we do not discuss any problems suggested by the phrase "or his agent."

[3] The witness explained that an undercover officer may buy an imitation narcotic and not not know that it is an imitation until many hours later when he gets a laboratory report. In the

Further testimony before the committee was that the mischief sought to be remedied was not general sales of imitation narcotics, but in particular, sales to undercover agents.[②] We conclude that there was a reasonable basis for the legislature to make criminal the proscribed conduct, i.e., the sale of an imitation narcotic to a "peace officer or his agent."

Since we must reverse the case and overrule the demurrer, it seems pertinent to discuss defendant's contention that the statute requires that a violator must know that he is selling to a police officer or his agent.

The legislature has provided the following principles for construction of the Oregon Criminal Code of 1971, which includes ORS 167.232:

"(1) The general purposes of * * * [this Act] are:
"* * * * *

---

meantime, he may again see the seller of the imitation narcotic, and the seller may become suspicious if the officer does not indicate that he knows that the substance is not a narcotic. Tape recording, Senate Criminal Law & Procedure Committee, March 31, 1971, Side I at 157-59.

② A witness was questioned by one of the senators.

"Q. Why confine [the proposed amendment] to policemen?

"A. Well, because this is the area which we're concerned with, and frankly the street seems to have a way of taking care of the problem themselves. If somebody, as they refer to it, burns another, this individual takes recourse on his own, and doesn't resort to law enforcement anyway. But this is designed to help us in this area of a—in other words, if this type of legislation were enacted, I think it would discourage some of this activity on the streets so that our officers aren't wasting their time and the taxpayers' money by buying catnip and talcum powder and seed products at fantastic prices. Other states, I might add, do have this type of legislation." Tape recording, Senate Criminal Law & Procedure Committee, March 31, 1971, Side I at 129-33.

"(c) To give fair warning of the nature of the conduct declared to constitute an offense and of the sentences authorized upon conviction.

"(d) To define the act or omission and the accompanying mental state that constitute each offense and limit the condemnation of conduct as criminal when it is without fault.

"* * * * *." ORS 161.025.

The Criminal Law Revision Commission's Commentary explains:

"Paragraph (d) is intended to make it clear that there is a legislative policy against creating liability without fault crimes (the so-called regulatory, public welfare, public tort or absolute liability crimes), with heavy penalties. This provision should be considered in connection with Article 7 which sets up the violation classification and in connection with the general requirements for culpability set out in Article 2." Proposed Oregon Criminal Code Final Draft and Report 2, Art 1, § 2 (1970).

The Commission referred to the culpability requirements of Article 2 as "[p]erhaps the single most basic part of the [new Criminal] Code * * *." Proposed Oregon Criminal Code Final Draft and Report 11, Art 2, § 11. Those requirements are:

"Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state." ORS 161.095 (2).

" 'Culpable mental state' means intentionally, knowingly, recklessly or with criminal negligence as these terms are defined in subsections (7), (8), (9) and (10) of this section." ORS 161.085 (6).

"Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable

mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence." ORS 161.115 (2).

The Commentary to these culpability statutes states:

"* * * [ORS 161.095 (2)] states that except as provided in * * * [ORS 161.105], a culpable mental state is required for each material element 'that necessarily requires a culpable mental state.' The quoted phrase is designed to make it clear that the draft does not require *scienter* with respect to an element relating solely to the statute of limitations, jurisdiction, venue and the like.

"* * * * * *

"* * * [ORS 161.105] sets forth the only exceptions to the need for a culpable mental state. Subsection (1) provides that a culpable mental state is not required for a violation (a noncriminal offense because the only authorized punishment is a fine) unless a culpable mental state is expressly included in the definition of the offense. Paragraph (b) provides, in the alternative, that a culpable mental state is not required for an offense defined by a statute outside the criminal code if the statute clearly indicates a legislative intent to dispense with any culpable mental state requirement.

"Subsection (2) applies the minimal culpability requirements to statutes outside the criminal code that may be enacted after its effective date. However, the Legislature will have flexibility to specifically provide otherwise, but in the absence of a statute that provides to the contrary, an offense that requires no culpable mental state will constitute a violation.

"* * * * * *

"* * * [ORS 161.115] provides a statutory framework for construing penal statutes as regards their culpability content, and the application of the

culpable mental state requirement to specific offenses.

"* * * * * *

"* * * [These statutes] will do away with the problem that now often arises when a statute defining a crime fails to prescribe a required culpable state of mind. In that case, it requires that intention, knowledge, recklessness or criminal negligence shall have existed in order to find the defendant guilty, except in cases of violations (which are not punished by imprisonment) or if the law defining the offense clearly indicates a purpose to dispense with any culpable mental state requirement.

"* * * * * *

"The Commission follows the Model Penal Code in expressing a policy adverse to use of 'strict liability' concepts in criminal law, whenever the offense carries a possibility of sentence of imprisonment.

"This position relates not only to offenses defined by the criminal code itself, but covers the entire body of state law, so far as penal sanctions are involved. As noted by the Model Penal Code commentators, in the absence of minimal culpability, the law has neither a deterrent nor corrective nor an incapacitative function to perform * * *." Proposed Oregon Criminal Code Final Draft and Report, supra at 9-11.

■ Within the purview of the statute under discussion here, selling imitation drugs is not a crime unless the buyer is a police officer. Unless the state is required to prove knowledge of this essential element that makes criminal what would otherwise not be the crime, then ORS 167.232 creates a strict liability offense. If the legislature had intended such a result it presumably would have spelled it out. Thus, although ORS 167.232 does not prescribe a culpable mental state, "culpability is nonetheless required." ORS

161.115 (2). No person is guilty of violating ORS 167.232 "unless he acts with a culpable mental state with respect to each material element of the offense," ORS 161.095 (2), which includes the identity of his customer. These statutes are plain and unambiguous. It will be incumbent upon the state in this case to prove knowledge of the defendant that he sold to a "peace officer."

Reversed and remanded with instructions to overrule the demurrer.