Submitted March 26, affirmed November 26, 2014, petition for review denied April 9, 2015 (357 Or 143)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LANCE WAYNE RYDER,
*Defendant-Appellant.*

Crook County Circuit Court
11FE0153; A151869

340 P3d 663

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Edmonds, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant challenges his judgment of conviction for third-degree assault, ORS 163.165(1)(e) (intentionally or knowingly causing physical injury to another with the aid of another person actually present), which is based on his involvement in an assault committed by his son and three other teenagers. Because defendant did not directly assault the victim himself, but recorded the assault on his cell phone and helped to plan the assault, which occurred in his home, the state prosecuted him on a theory of aiding and abetting, ORS 161.155(2)(b). Defendant challenges that theory of accomplice liability, arguing that, "under the principles announced" in *State v. Pine*, 336 Or 194, 82 P3d 130 (2003), and *State v. Merida-Medina*, 221 Or App 614, 191 P3d 708 (2008), *rev den*, 345 Or 690 (2009), a person who is present during an assault involving multiple assailants and who aids in its planning is not liable under a theory of aiding and abetting if the person did not directly inflict physical injury or take action that produced the physical injury. He raises four assignments of error, all of which are predicated on that argument. We disagree with defendant's reading of those cases and conclude that, under the applicable statutes, the trial court did not err in its denial of defendant's motion for judgment of acquittal (MJOA), its giving of jury instructions, and its refusal to give defendant's requested jury instructions. We affirm.

In reviewing the denial of a motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009). In December 2010, the victim was staying in the basement of defendant's home. On an occasion when the victim was not there, defendant's teenaged son, Ryder, and his three friends, Zulim, Selbo, and Kingham, searched the victim's jacket and found paperwork revealing that he was a registered sex offender. Kingham reacted in anger and wanted to lure the victim back to defendant's house so that the group could "beat him up" and "get him down [to the basement] and like do some damage." The four went upstairs to tell defendant of their discovery, and defendant returned to the basement with them to discuss the discovered paperwork and what to do about it. The group—four teenagers and

defendant—devised a plan. Kingham would inform the victim via text message that they had a "bunch of beer" and that he should return to defendant's house and get drunk with them. When the victim returned, they would "jump him" as soon as he reached the basement. It was defendant's idea to lure the victim with beer that he would purchase. Defendant also would record the attack on his mobile phone, which they planned to upload to YouTube.

Kingham texted the victim as planned, and the victim arrived at defendant's house and went down to the basement. The victim handed Ryder a cigarette, and Ryder tackled him to the ground. Kingham asked to be the first to hit the victim; after she did, the three others proceeded to hit or kick him as he lay on the ground on his back. During the attack, defendant—who, because of a physical disability does not have the use of his right arm and right leg—did not directly attack the victim, but recorded the attack on his phone. Eventually, the teenage assailants stopped assaulting the victim after defendant told them to, and the victim left the house. After the assault, the teenagers went upstairs to get drunk and watch the video of the attack on defendant's phone.

Defendant was later charged with third-degree assault, ORS 163.165(1)(e). That statute provides:

"(1)   A person commits the crime of assault in the third degree if the person:

"* * * * *

"(e)   While being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]"

The state proceeded with the theory that defendant was liable for that offense because he aided and abetted the assault by encouraging, promoting, and advising the teenagers' actions, ORS 161.155(2). *State v. Burgess*, 240 Or App 641, 649-50, 251 P3d 765 (2011), *aff'd*, 352 Or 499, 287 P3d 1093 (2012), provides a summary of aid-and-abet accomplice liability:

"A person may be culpable for * * * conduct [proscribed by a criminal offense] as an accomplice if '[w]ith the intent to *promote or facilitate* the commission of the crime the person

\*\*\* [a]ids or abets or agrees or attempts to aid or abet such other person in *planning or committing* the crime[.]' ORS 161.155(2)(b) (emphases added). \*\*\*

"Although 'the least degree of concert or collusion between accomplices suffices' to establish culpability as an aider or abettor, mere presence or acquiescence alone are not sufficient. *State ex rel Juv. Dept. v. Holloway*, 102 Or App 553, 557, 795 P2d 589 (1990)."

At the close of trial, defendant moved for a judgment of acquittal, arguing that the Supreme Court had rejected an aid-and-abet theory for third-degree assault in *Pine* and that "the plain text of ORS 163.165(1)(e) requires the State to prove, as a distinct element of the crime, that a defendant caused physical injury to the victim." Thus, in defendant's view, the case need not proceed to the jury because the state had not adduced any evidence that defendant directly inflicted or took actions that produced physical injury.

The trial court denied the MJOA. In its view, *Pine* did not hold that an aid-and-abet theory of liability was unavailable for ORS 163.165(1)(e). The trial court also considered *Merida-Medina*, 221 Or App at 619, which held that the defendant's aid to a single assailant was conduct "necessarily incidental" to the crime as provided by ORS 161.165(2), so that the defendant could not be liable as an accomplice.[1] The trial court concluded that, because defendant was involved in an assault involving more than one assailant, *Merida-Medina* was distinguishable.

Defendant then objected to jury instructions that would allow the jury to find him guilty of third-degree assault on the theory that he aided and abetted the assault, and requested special instructions that (1) "[d]efendant must inflict physical injury directly" and (2) "[d]efendant's mere presence at scene of crime [is] insufficient to prove aid abed [*sic*]." The trial court rejected defendant's challenge

---

[1] ORS 161.165 provides:

"Except as otherwise provided by the statute defining the crime, a person is not criminally liable for conduct of another constituting a crime if:

"(1) The person is a victim of that crime; or

"(2) The crime is so defined that the conduct of the person is necessarily incidental thereto."

to the jury instructions and his request for special instructions, for the reasons it provided in its denial of the MJOA. Defendant took exception to the trial court's jury instructions. On appeal, defendant reprises the arguments he made to the trial court.

"In ruling on the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). "[W]e usually first determine what, precisely, the legislature intended to require the state to prove." *State v. Lockamy*, 227 Or App 108, 113, 204 P3d 822 (2009). What the state must prove turns on whether defendant can only be convicted of ORS 163.165(1)(e) on the basis of direct liability (defendant's argument) or whether a theory of aiding-and-abetting accomplice liability is allowed (the state's argument). We first discuss the two cases upon which defendant primarily relies, *Pine* and *Merida-Medina*, and then discuss the legislative intent of the third-degree assault statute, ORS 163.165(1)(e).

In *Pine*, the Supreme Court considered a third-degree assault conviction under ORS 163.165(1)(e) where the trial court had instructed the jury that the offense "requires proof that the defendant either caused physical injury while being aided by another who was actually present, *or * * * aided another who was actually present in causing physical injury.*" 336 Or at 198 (emphasis in original). The issue before the court was whether the defendant was directly liable under ORS 163.165(1)(e) for aiding another person in causing the injury even if the defendant did not personally inflict the injury. *Id.* In deciding the limits of direct liability under ORS 163.165(1)(e), the court concluded that, if a person does not directly inflict a physical injury, he "must have engaged in conduct so extensively intertwined with infliction of the injury that such conduct can be found to have produced the injury."[2] *Id.* at 207. The state raised on appeal a theory

---

[2] The state here alternatively argues on appeal that defendant's conduct was "so extensively intertwined" with the assault that such conduct can be said to have produced the injury. The state, however, prosecuted its case on an aid-and-abet theory, not direct liability, and we therefore do not reach that argument.

that the defendant was liable for aiding-and-abetting under ORS 161.155(2), but that argument was not preserved, so the court limited its analysis to whether aiding an assailant could result in direct liability under ORS 163.165(1)(e). *Id.* at 207.

In arriving at the conclusion that the defendant could not be directly liable for aiding the assailant under ORS 163.165(1)(e), the court reasoned that liability for that offense did not extend to the person who aids the assault because such a broad reading undercuts accomplice liability under ORS 161.155(2)(b); it "would impose *direct* liability under ORS 163.165(1)(e) upon a defendant who '* * * aid[ed] and abet[ted]' another person actually present in committing the assault." *Id.* at 204 (emphases altered from original). The court added:

> "Such a result would obviate the need for imposition of liability for the conduct of another person, as set out in ORS 161.150 and ORS 161.155(2)(a) and (b). In short, the state's broad reading of the word 'causes' in ORS 163.165(1)(e) is inconsistent with the alternative forms of criminal liability set out in ORS 161.150 and ORS 161.155(2)(a) and (b)."

*Id.* That reasoning—that the state's argument for direct liability in *Pine* obviated accomplice liability—implies that accomplice liability is indeed possible under ORS 163.165(1)(e). *See also State v. Phillips*, 354 Or 598, 603-04, 317 P3d 236 (2013) ("*Pine* recognized the possibility that a person could be liable for third-degree assault under ORS 161.155 for aiding and abetting the commission of that crime, but the court did not have occasion to decide when, if ever, the circumstances would justify imposition of aid-and-abet liability."). We therefore reject defendant's argument that *Pine* stands for the proposition that only direct liability is allowed under ORS 163.165(1)(e).

In *Merida-Medina*, 221 Or App at 616-17, the defendant challenged the trial court's jury instruction that he could be liable for aiding or abetting an assault that involved two participants: the defendant and another assailant. We were presented with a preserved argument that aid-and-abet accomplice liability for third-degree assault, ORS 163.165(1)(e), is not allowed because the

defendant's conduct was "necessarily incidental" to the crime within the meaning of ORS 161.165(2). *Id.* at 616. The defendant contended that ORS 161.165(2) exempts the aiding person from criminal liability for third-degree assault, ORS 163.165(1)(e), for the conduct of the principal assailant. *Id.* That was so, in the defendant's view, because the aiding person's conduct is "necessarily incidental" to the crime of assault that requires the aid of another person. *Id.* at 616-17. The state remonstrated that the defendant interpreted ORS 161.165(2) too broadly, contending that ORS 161.165(2) was intended to exempt persons who were "victim-like." *Id.* at 617.

To resolve that disagreement, we turned to the legislative history, in the form of commentary to the Criminal Law Revision Commission, to discern the legislature's intent for the meaning of conduct necessarily incidental to the crime. *Id.* at 618-19 (quoting Commentary to Criminal Law Revision Commission Proposed Criminal Code, Final Draft and Report § 15, 14 (July 1970)). We noted that, for some crimes, such as blackmail, the crime cannot occur without the victim taking some action, *i.e.*, paying the blackmail; for other crimes, such as prostitution, the crime cannot occur without the person, who is not quite a victim, taking some action, *i.e.*, paying for sex. *Id.* at 618. We distilled from the commentary to the Criminal Law Revision Commission, and its reliance on the Model Penal Code commentary, the conclusion that

> "criminal liability does not turn on a judicial determination of whether a person is 'victim-like' or how actively the person sought to participate in the crime, as the state asserts. Rather, where a crime necessarily involves conduct by multiple parties, *the determination of who is criminally liable is made by the legislature in defining the crime,* and the general rules of complicity—that is, liability for the conduct of another, as defined in ORS 161.155—do not apply."

*Id.* at 619 (emphasis added; footnote omitted).[3] Thus, we held that, because "the aid of 'another person' is necessary for the crime [of third-degree assault, ORS 163.165(1)(e),] to occur,

---

[3] For more on the legislative intent of ORS 161.165(2), see *Merida-Medina,* 221 Or App at 617-19, for the extensively quoted commentary.

under ORS 161.165(2), the 'other' person is not deemed to be an accomplice in the third-degree assault." *Id. Merida-Medina*, however, involved an assault committed by two persons—a putative aider and abettor and an assailant—and does not answer the question of whether a putative aider and abettor is a person who remains necessarily incidental to the assault if the person's aid is provided to two or more assailants.

As noted in *Merida-Medina*, 221 Or App at 619, "the determination of who is criminally liable is made by the legislature in defining the crime," and for the task of discerning the legislature's intent behind the third-degree assault statute, ORS 163.165(1)(e), we employ the methodology set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We do so by examining the text of the statute in context, along with its legislative history. *Id.*

We begin by observing that the part of ORS 163.165(1)(e) contested by the parties—"while being aided by *another person* actually present" (emphasis added)—requires the participation of only one other person. Participation in the assault by any additional person is superfluous to meeting the requirements of third-degree assault, ORS 163.165(1)(e). It follows that, although the participation of another person is necessary for the crime to occur, the participation of any additional persons are unnecessary for the crime to occur. We stated as much in *State v. Phillips*, 242 Or App 253, 258, 255 P3d 587 (2011), *aff'd*, 354 Or 598, 317 P3d 236 (2013), where we indicated that it was not plain error for the trial court to determine that ORS 161.165(2) and our holding in *Merida-Medina* did not apply to an assault involving three persons: "[T]here were *three* assailants; thus, defendant's presence was not 'necessarily incidental' to the assault." (Emphasis in original.)

Moreover, in examining whether aid-and-abet accomplice liability is allowed under ORS 163.165(1)(e), we also observe that, despite the obvious similarity between aiding and abetting under ORS 161.155(2) and "while being aided by another person actually present," the required aid for ORS 163.165(1)(e) is characterized differently. The aiding requirement in ORS 163.165(1)(e)

includes proximity and contemporaneousness, which are not included in ORS 161.155(2). That is, the aider contemplated for third-degree assault must be "actually present" and his or her aid must occur "[w]hile" another person is causing physical injury to a victim. In contrast, aiding and abetting liability under ORS 161.155(2)(b) occurs when a person "aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime"; that language does not limit where or when the aid can occur.[4] *See State v. Lopez-Medina*, 143 Or App 195, 199, 923 P2d 1240 (1996) ("To aid and abet requires proof of involvement with the crime, ORS 161.155(2), although there does not have to be proof of defendant's personal presence at the time and place of the commission of the offense." (Footnote omitted.)). The difference in the aiding language of ORS 163.165(1)(e) suggests that the offense does not incorporate the theory of aiding and abetting. Accordingly, *Merida-Medina* cannot stand for the proposition that aiding-and-abetting conduct in general is "necessarily incidental" to ORS 163.165(1)(e) because aiding and abetting is incorporated into the offense.

The legislative history illuminates the intended purpose of ORS 163.165(1)(e) and the question of whether accomplice liability applies. The legislature amended ORS 163.165 in 1991. Or Laws 1991, ch 475, § 1. Terry Ann Leggert, then an Oregon Department of Justice attorney who prosecuted gang-related crimes in Portland, testified before the House Judiciary Crime and Corrections Subcommittee that she had drafted the proposed offense after seeing "[s]everal cases [involving multiple assailants] causing serious injury to the victim but not serious under the statutory definition,[5] and it was only a misdemeanor

---

[4] Conduct that occurs after a crime has been committed cannot be aiding and abetting. *See State v. Barboe*, 253 Or App 367, 290 P3d 833 (2012), *rev den*, 353 Or 714 (2013) (aiding and abetting must occur prior to or during the commission of the crime but not after). Nevertheless, our point still holds: Aiding and abetting under 161.155(2) can occur before the commission of the crime, whereas the aid required as part of ORS 163.165(1)(e) must occur during the assault.

[5] ORS 161.015(8) provides that "'[s]erious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

assault."[6] Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Tape 56, Side A (statement of Terry Ann Leggert). She testified that, in her view, the misdemeanor classification for such acts was inequitable given "the seriousness of the offense, the way it affects the victim; they are extremely traumatized." *Id.* When asked for the rationale for the increased seriousness of the crime for an injury that was of the same degree as a misdemeanor assault, Leggert answered that the "impact on the victim is much more severe if the person is assaulted by more than one assailant." *Id.* Thus, the purpose was to make more serious the crime of an assault committed by two or more assailants.

Leggert also addressed the subcommittee's concerns about the scope of the proposed offense. Representative Ron Sunseri asked Leggert to clarify the scope of the proposed offense and whether it would include "the idea that the high school battle that goes on after the football game and you've got somebody that holds somebody's coat or a group of people standing around watching what's going on." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Tape 55, Side B (statement of Terry Ann Leggert). Leggert responded that

> "the people who are standing watching aren't aiding the person who is committing the assault, so they wouldn't be

---

[6] Leggert also stated before the subcommittee that, in drafting the proposed offense, she tried to "parrot the language of the robbery statute so that * * * the person has to be there, actually, actively participating. * * * It is my understanding is that is how the robber[y] two, second-degree statute [ORS 164.405(1)(b) (a person commits the crime of second-degree robbery if the person commits third-degree robbery, ORS 164.395, and '[i]s aided by another person actually present')] has been interpreted, so I thought it would be good to just parallel that language." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, March 19, 1991, Tape 56, Side A (statement of Terry Ann Leggert). The reference to ORS 164.405(1)(b) as an analog to ORS 163.165(1)(e) is helpful; in *State v. Smith*, 229 Or App 243, 248-49, 211 P3d 961 (2009), we concluded that, where the defendant helped drive a getaway car and plan a robbery, which was committed by two other persons (we stated that "each was aided by another person actually present" for purposes of ORS 164.405(1)(b)), the defendant was liable as an aider-and-abettor for the conduct of the two principals. The defendant argued that, because he was not "actually present" during the robbery, he could not be convicted of second-degree robbery, ORS 164.405(1)(b). We noted that his argument misplaced the theory of liability—the defendant's basis for criminal liability was a theory of aiding or abetting, not direct liability.

covered by the statute and they also wouldn't be covered as an aider-or-abettor because as an aider-or-abettor you have to do something to actually promote or facilitate or encourage the assault, so they would never be included."

*Id.* In those comments, Leggert expressly acknowledged that aiding-or-abetting accomplice liability can apply (so long as it satisfies the requirements for accomplice liability under ORS 161.155(2)(b)) to ORS 163.165(1)(e). Leggert also stated that her intention for the amendment was "to include those people who are 'actively participating,'" when asked by Representative Tom Brian if "aided" includes "a lookout." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Tape 56, Side A (statement of Terry Ann Leggert). In context with other remarks during the hearing, that answer concerned direct liability for the offense, not accomplice liability as suggested by defendant on appeal. Additionally, at the Senate Committee on Judiciary, Chairperson Joyce Cohen and Senator Dick Springer questioned committee counsel, Ingrid Swenson, about the scope of liability under the proposed amendment:

"Springer: Three guys get in a barroom fight, one guy helps somebody else, holds somebody, and guy hits somebody with his fist and breaks his nose; instead of being a misdemeanor three, assault four, we have a C felony.

"Cohen: All or none or whom, everyone involved. Ingrid?

"Swenson: On an aid-and-abet theory, yes. I believe everyone involved, holding or otherwise, encouraging the activity would be guilty of the same offense."

Tape Recording, Senate Committee on Judiciary, HB 2018, May 27, 1991, Tape 192, Side A (statement of Ingrid Swenson).

In sum, the examination of the text and context of ORS 163.165(1)(e) and its legislative history demonstrates that accomplice liability generally applies to the offense. Our holding in *Merida-Medina* is limited to the circumstance where a person is not liable for aiding a single assailant because that person's aid is "necessarily incidental" to proof of the offense proscribed in ORS 163.165(1)(e). In this

case, however, four persons directly assaulted the victim and all four could be directly liable as principals under ORS 163.165(1)(e). Because there is nothing in the statutory language or legislative history of ORS 163.165(1)(e) that prohibits an accomplice from being liable for that offense under ORS 161.155(2)(b), we conclude that the participation of an additional assailant, *i.e.*, two or more assailants, makes the conduct of the person who aids or abets the crime proscribed by ORS 163.165(1)(e) criminally liable under an aid-and-abet theory.

With that conclusion in mind, we turn to whether the evidence was sufficient for the jury to find defendant guilty of third-degree assault on a theory of aiding and abetting and whether the trial court erred in denying defendant's MJOA. Defendant's MJOA was predicated on his argument that because aiding-and-abetting liability did not apply, his conduct—his participation in planning the attack and his presence during the assault—was insufficient to support a showing that he was directly liable under ORS 163.161(1)(e) as required by *Pine, i.e.,* that he directly inflicted physical injury upon the victim or that his conduct was so extensively intertwined with the injury that his conduct could be found to have produced the injury. Our conclusion that accomplice liability is generally allowed obviates defendant's argument that the evidence is insufficient to prove direct liability. Rather, on an aiding-and-abetting accomplice liability theory, the state met its burden of showing that defendant's conduct aided the assault. That defendant helped plan the assault, permitted the house to be used as the setting for the assault, and purchased beer to lure the victim to his house—all this was sufficient evidence for a jury to find the essential elements of third-degree assault beyond a reasonable doubt. The trial court did not err in denying defendant's MJOA.

We turn to defendant's assignments of error regarding the trial court's jury instruction and defendant's requested special instructions. We first note that, in reviewing a trial court's refusal to give a requested jury instruction, we review the evidence supporting defendant's requested instruction in the light most favorable to the defendant, *State v. Marsh,* 186 Or App 612, 614, 64 P3d 1141, *rev den,*

335 Or 655 (2003); here, however, defendant's appeal rests on a legal argument, and there is no significant discrepancy in the record that would require us to view the facts differently than previously stated in order to determine whether there was instructional error.

"In determining whether it was error to give a particular instruction, we read the instructions as a whole to determine whether they state the law accurately." *State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006). "It is not error for a trial court to refuse to give a requested instruction if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction." *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993). As with the MJOA, defendant's argument concerning the jury instructions is based on his assertion that accomplice liability is not allowed under ORS 163.165(1)(e). Here, we similarly conclude that, because aiding-and-abetting accomplice liability is allowed under ORS 161.155(2)(b) for the circumstance at issue, the trial court's instructions correctly set out the elements required for ORS 163.165(1)(e) and the theory of aiding-and-abetting liability. As a result, the trial court did not err in giving the instructions and in rejecting defendant's proposed instructions.

Affirmed.